OPINION
{¶ 1} On April 16, 1995, plaintiff, Jeffrey Charles Krotine, Jr., was injured while riding in a motor vehicle that was rear-ended by another vehicle driven by defendant Scott Neer. Thereafter, plaintiff filed suit against defendants Neer, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company ("State Farm"), alleging that he had suffered personal injury as a result of Neer's negligence. At trial, plaintiff attempted to prove that his injuries and medical treatment, which started on April 20, 1995, and continued to the date of trial on December 3, 2001, was causally related to the April 16, 1995 accident. The issue was tried before a jury, which returned a verdict in plaintiff's favor in the amount of $15,000. That amount was later reduced by $6,363.87, the amount paid to plaintiff by State Farm prior to trial.
 {¶ 2} After trial, plaintiff requested a new trial, moved for judgment notwithstanding the verdict, and for additur pursuant to Civ.R. 59. These motions were denied. Plaintiff now appeals raising the following six assignments of error:
 {¶ 3} "[1.] The trial court erred in granting Appellee Neer's Motion in Limine and in excluding from evidence during the trial any evidence of Appellant's medical bills in the sum of $19,674.14 on the basis that the bills were paid by insurance, and Appellant was not the real party in interest.
 {¶ 4} "[2.] The trial court abused its discretion in excluding from evidence on the grounds of relevancy Appellant's treatment records that were filed with the court pursuant to R.C. 2317.40 and 2317.422, and were stipulated to be authentic business records.
 {¶ 5} "[3.] The trial court erred in failing to admit evidence or charge the jury with instructions on permanency of the injury and future damages.
 {¶ 6} "[4.] The trial court erred to the prejudice of plaintiff-appellant by submitting an improper special interrogatory which contained two subject matters to the jury.
 {¶ 7} "[5.] The trial court erred in refusing to admit evidence or instruct the jury concerning Appellant's underinsured motorist coverage and claim against appellee State Farm Insurance or instruct the jury concerning Appellant's underinsured motorist claim against Appellee State Farm Insurance.
 {¶ 8} "[6.] The trial court erred in overruling Appellant's motion for a new trial, a judgment notwithstanding the verdict and for additur pursuant to Civil Rule 59 as the jury's verdict was grossly inadequate and against the greater weight of the evidence."
 {¶ 9} In his first assignment of error, plaintiff argues that it was improper for the trial court to exclude evidence of a portion of his medical bills which were paid on his behalf by defendant State Farm. While these medical bills were the topic of a preliminary motion in limine filed by defendant State Farm, plaintiff fails to direct this court's attention to the portion of the trial record at which point the plaintiff moved the court to admit this evidence, or the portion of the record at which point the trial court made a ruling excluding it.
 {¶ 10} As the trial court clearly advised the parties in this case, a decision on a motion in limine is a pretrial, preliminary, anticipatory ruling on the admissibility of evidence. A ruling on a motion in limine is interlocutory, usually dealing with the potential admissibility of evidence at trial. It therefore cannot serve as the basis for an assignment of error on appeal. State v. Grubb (1986),28 Ohio St.3d 199, 201-202. Since a motion in limine seeks only a preliminary ruling, the proponent of the evidence must actually move the court at trial to admit the evidence, whereas the party opposing the evidence must present to the court at that time an objection in order to properly preserve the question for appeal. State v. Maurer (1984),15 Ohio St.3d 239, 259-260.
 {¶ 11} As the Ohio Supreme Court explained at length in Grubb, supra:
 {¶ 12} "* * * A `motion in limine' is * * * `[a] written motion which is usually made before or after the beginning of a jury trial for a protective order against prejudicial questions and statements * * * to avoid injection into trial of matters which are irrelevant, inadmissible and prejudicial[,] and granting of [the] motion is not a ruling on evidence and, where properly drawn, granting of [the] motion cannot be error. * * *'
 {¶ 13} "* * *[A]lthough the motion receives widespread use in Ohio courts, `* * * it is frequently misused and misunderstood. * * *' In State v. Spahr (1976), 47 Ohio App.2d 221 * * * the court reasoned in paragraph one of the syllabus:
 {¶ 14} " `As related to trial, a motion in limine is a precautionary request, directed to the inherent discretion of the trial judge, to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside the presence of the jury.' The power to grant the motion is not conferred by rule or statute, but instead lies within the inherent power and discretion of a trial court to control its proceedings. Id. at 224. Riverside Methodist Hosp. Assn. v. Guthrie [(1982), 3 Ohio App.3d], at 310. See, also, Evid.R. 103(A) and 611(A). The function of the motion as a precautionary instruction is to avoid error, prejudice, and possibly a mistrial by prohibiting opposing counsel from raising or making reference to an evidentiary issue until the trial court is better able to rule upon its admissibility outside the presence of a jury once the trial has commenced. * * *
 {¶ 15} "* * *
 {¶ 16} " `The sustaining of a motion in limine does not determine the admissibility of the evidence to which it is directed. Rather it is only a preliminary interlocutory order precluding questions being asked in a certain area until the court can determine from the total circumstances of the case whether the evidence would be admissible. * * *' (Emphasis added.) * * *
 {¶ 17} "Thus, a motion in limine, if granted, is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue. In virtually all circumstances finality does not attach when the motion is granted. Therefore, should circumstances subsequently develop at trial, the trial court is certainly at liberty `* * * to consider the admissibility of the disputed evidence in its actual context.' State v. White (1982),6 Ohio App.3d 1, at 4." (Some citations omitted; emphasis sic.) Id. at 200-202.
 {¶ 18} The court continued:
 {¶ 19} "The instant motion * * * was nothing more than a tentative, interlocutory order. As such, appellant could have proffered the temporarily prohibited evidence outside the presence of the jury when the issue arose during trial and, if the proffered evidence was then excluded, he could have perfected an appeal as of right from the trial court's final judgment at the conclusion of the case. * * *
 {¶ 20} "The question necessarily arises whether the granting of a motion in limine relieves opposing counsel of the burden of making a proffer of the evidence when the issue becomes ripe for consideration during the course of the trial. Stated otherwise, does the issuance of a motion in limine, in and of itself, preserve the record for opposing counsel on appeal? We conclude that it does not. * * *
 {¶ 21} "* * *
 {¶ 22} " `* * * When sustained, losing counsel should make a proffer of the otherwise excluded evidence at the proper time during the trial and have a second [and hence final] determination or hearing by the court as to its admissibility. * * *'
 {¶ 23} " `* * * An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial.' " Id. at 202-203.
 {¶ 24} Clearly, at trial, the party challenging a preliminary ruling must either seek the introduction of the evidence at the appropriate time, or make a timely objection to its introduction in order to enable the court to make a final determination as to its admissibility. This action is also required to preserve any objection on the record for purposes of appeal. Grubb, supra, paragraph two of the syllabus. Stated alternatively:
 {¶ 25} "* * * [I]n order to preserve supposed error from an anticipatory order in limine, the complaining party must raise the evidentiary issue on the record at the place in the trial that the foundation and context has actually been developed. * * *
 {¶ 26} "* * *
 {¶ 27} "If counsel opposes the reception of an adverse party's evidence, he must object when the evidence is actually presented, or he may well have waived any objection to the denial of his earlier motion in limine." (Citation omitted.) State v. White (1982), 6 Ohio App.3d 1, 4.
 {¶ 28} In this case, the trial court issued a preliminary ruling at which time it specifically notified the parties that it was necessary to raise the issue of the admissibility of plaintiff's challenged medical bills at trial. However, the record is completely devoid of any indication that plaintiff's counsel moved the court to offer these bills into evidence at trial. The record is also devoid of any final ruling by the court during trial regarding the admissibility of this evidence. Consequently, we find that plaintiff failed to demonstrate that the court abused its discretion and failed to preserve this alleged error for appellate review. Plaintiff's first assignment of error is therefore overruled.
 {¶ 29} In his second assignment of error, plaintiff maintains the trial court incorrectly failed to admit the medical records of plaintiff's treating physicians and therapists.
 {¶ 30} At trial, the court engaged in a lengthy diatribe, criticizing plaintiff's counsel's knowledge of the distinction between authentic records and authentic records which are also relevant and therefore admissible at trial. In the end, the court excluded plaintiff's medical records pursuant to Evid.R. 401 as not relevant evidence to the issues at trial. The court opined:
 {¶ 31} "[The Court]: * * * Gentlemen, I said this three or four times during this trial, this trial upsets me. This trial upsets me because I get tired wasting my time with lawyers who don't' prepare.
 {¶ 32} "[Plaintiff's counsel]: Your Honor, I take issue. We have been prepared. I do take issue of that, yes.
 {¶ 33} "[The Court]: Okay. You be quiet. I'm going to explain the issue to you.
 {¶ 34} "* * *
 {¶ 35} "* * * Pay attention.
 {¶ 36} "This is known as Evidence 101. Authenticity and admissibility are apples and oranges. They are not the same thing.
 {¶ 37} "Authenticity means that the records are what they purport to be, accurately gathered and all that. They haven't been altered, all those good things.
 {¶ 38} "Admissibility is an entirely different issue. * * *
 {¶ 39} "* * * Listen [counsel], you might learn something. I think the best way to describe it is this:
 {¶ 40} "Let's assume hypothetically that this plaintiff was in an automobile accident in 1990. He was in another automobile accident in 1992. And he was in another automobile accident in 1995, this case. And in all three cases he went to Riverside Methodist Hospital, Columbus, Ohio. He was treated. And you go to Riverside and you get the hospital records on all three accidents, you filed them with the court, they are authentic. Does that make any sense to you?
 {¶ 41} "[Plaintiff's counsel]: Under Ohio Revised Code Section—
 {¶ 42} "[The Court]: * * * That's an issue of relevancy. Authenticity as nothing, nothing, nothing, nothing to do with relevancy.
 {¶ 43} "* * *
 {¶ 44} "You still don't understand. So what I'm trying to point out is there's about eight miles between authenticity and admissibility.
 {¶ 45} "* * *
 {¶ 46} "That is the easiest way to understand the difference between relevancy, or I'm sorry, admissibility and authenticity.
 {¶ 47} "I am not saying these documents you got from the hospital and filed with the court are not authentic. The statute says that.
 {¶ 48} "I will concede that there are a few judges around the state that got lost in the swamp thinking just because you filed them in court they are admissible. That's not the law, never was, and if they did that they are wrong.
 {¶ 49} "Now I'm not letting these records in because you filed them with the court. I said it before. That's the law in Ohio, it's been the law in Ohio. And if you want to proffer them, proffer them, but you simply do not establish authenticity and equate it with admissibility. They are two different terms.
 {¶ 50} "* * *
 {¶ 51} "[Plaintiff's counsel]: That statute [R.C. 2317.40] specifically indicates that medical records can be used as evidence. In this particular case the relevant — the medical records that are being offered are the treatment records of Mr. Krotine directly related to his injuries from the April 16, 1995 automobile accident.
 {¶ 52} "[The Court]: Bingo. How do I know that? Because you told me.
 {¶ 53} "[Plaintiff's counsel]: The court can look at the records. The records speak for themselves.
 {¶ 54} "[The Court]: I'm supposed to look at the records and make that determination. [Counsel], that's not the way it works.
 {¶ 55} "[Plaintiff's counsel]: Your Honor, Mr. Krotine testified at length to the places that he was treated and the approximate days, and we have an exhibit that states the days, and those dates match all the entries in the records that we are trying to introduce.
 {¶ 56} "[The Court]: With all due respect, guys, you are missing the whole point. * * *" (Tr. at 147; 268-269; 270-271.)
 {¶ 57} While the trial court appears to have a grasp on the difference between authentic evidence and authentic evidence which is relevant and therefore admissible, we believe that the trial court abused its discretion when it refused to even examine the records offered by plaintiff, in light of the testimony and evidence given at trial, in order to determine whether those records were relevant and therefore admissible. Evid.R. 104(A) specifically provides: "Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court * * *." (Emphasis added.)
 {¶ 58} Evid.R. 401 defines relevant evidence broadly as "any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In this case, plaintiff's physician testified, as did plaintiff at length concerning the physicians he consulted, the treatment rendered by those physicians, the dates of treatment, and that the treatment was related, in his opinion, to the injuries sustained in the collision. Additionally, the content of the records indicate that they are related to treatment plaintiff received as a result of the accident. Thus, under the very broad definition of relevant evidence, these records would certainly appear to have a tendency to make the existence of any fact that is of consequence to the determination of this action more probable or less probable than it would be without the evidence. As such, to plaintiff's prejudice, the jury in this case was asked to decide this case without the benefit of plaintiff's medical treatment records. The trial court's refusal to examine the evidence in order to render a ruling was an abuse of discretion. Accordingly, plaintiff's second assignment of error is sustained.
 {¶ 59} In his third assignment of error, plaintiff argues that the trial court erred when it refused to instruct the jury regarding the alleged permanency of plaintiff's injuries. In support of this claim, plaintiff directs this court's attention to the testimony of plaintiff's physician, Dr. Ronald E. Ludrosky, who opined that plaintiff had suffered a permanent injury to his upper back and neck and will likely require further treatment as needed. In response, defendant Neer argues that plaintiff was not prejudiced by the failure to give the requested instruction because the jury concluded that the treatment rendered by Dr. Ludrosky was not related to the injuries suffered as a result of this collision.
 {¶ 60} We find two flaws in defendant's argument. First, it would have been possible for the jury to conclude that Dr. Ludrosky's treatment was not related to the accident, while at the same time accept his conclusion that plaintiff's injuries were permanent. Second, in light of our disposition of plaintiff's second assignment of error, what the jury concluded at the end of the first trial is not relevant to what a second jury will conclude at retrial. In this case, we find that plaintiff presented sufficient evidence regarding the alleged permanency of his injuries to justify an instruction on permanency. Accordingly, plaintiff's third assignment of error is sustained.
 {¶ 61} In his fourth assignment of error, plaintiff argues that the trial court improperly submitted "an improper special interrogatory which contained two subject matters to the jury." That interrogatory stated:
 {¶ 62} "Do a majority of the Jurors (6 out of 8) find that the May 6, 1997, surgery and its corresponding medical treatment are related directly to and was proximately caused by the automobile accident of April 16, 1995?"
 {¶ 63} Plaintiff contends that the interrogatory was improper because the jury could have either concluded that the surgery was necessitated by the accident, but that the medical treatment for that surgery was not, or that the surgery was not caused by the accident, but that the medical treatment afterward was.
 {¶ 64} We find no merit to plaintiff's argument. Jury instructions are within the trial court's discretion, which we will not disturb absent an abuse of discretion. State v. Guster (1981), 66 Ohio St.2d 266, 271. An abuse of discretion is much more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Moreover, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 65} In reviewing jury instructions on appeal, we must consider the specific charge at issue in the context of the entire charge, not in isolation. State v. Thompson (1987), 33 Ohio St.3d 1, 13. An inadequate jury instruction that, in effect, misleads the jury constitutes reversible error. Sharp v. Norfolk W. Ry. Co. (1995),72 Ohio St.3d 307, 312, citing Marshall v. Gibson (1985), 19 Ohio St.3d 10,12.
 {¶ 66} In this case, the language of the challenged interrogatory is clear. If the jury concluded that plaintiff's shoulder surgery was not caused by or related to the accident, then it could not have logically concluded that the treatment for that surgery was somehow caused by the accident. Stated alternatively, if the jury did conclude the surgery was caused by the accident, then it would be impossible for it find that the recovery process and medical treatment related thereto was not. Accordingly, plaintiff's fourth assignment of error is overruled.
 {¶ 67} In his fifth assignment of error, plaintiff argues that the trial court incorrectly refused to instruct the jury concerning plaintiff's underinsured motorist claim against defendant State Farm.
 {¶ 68} In order to show reversible error in this case, plaintiff must make a two-part showing. First, he must show that the trial court's refusal to give the proposed jury instruction was an abuse of discretion. Second, the proponent must demonstrate that he was prejudiced by the court's refusal to give the proposed instruction. Jaworowski v. Med. Radiation Consultants (1991), 71 Ohio App.3d 320, 327-328.
 {¶ 69} In support of this assignment of error, plaintiff makes no attempt to demonstrate that the terms of plaintiff's insurance contract are in any way relevant to the issues presented in this personal injury action. Prior to trial, defendant Neer admitted negligence. Defendant State Farm also admitted in its pleadings that it insured defendant Neer. Indeed, the only issue submitted for the jury's determination was causation and the extent of plaintiff's damages as a result of the April 16, 1995, accident. Accordingly, plaintiff's insurance contract is not relevant evidence as defined in Evid.R. 401.
 {¶ 70} Other than making the assertion that he had the "right" to inform the jury that he was suing his own insurer, plaintiff fails to advance any fact or legal argument which might demonstrate that the trial court abused its discretion, or that plaintiff was in fact prejudiced by the trial court's ruling. Therefore, plaintiff's fifth assignment of error is overruled.
 {¶ 71} In his sixth and final assignment of error, plaintiff maintains that the trial court erred when it overruled his motion for a new trial, judgment notwithstanding the verdict, and for additur. In light of our disposition of plaintiff's second and third assignments of error, plaintiff's final assignment of error has been rendered moot.
 {¶ 72} For the foregoing reasons, defendant's first, fourth and fifth assignments of error are overruled, his second and third assignments of error are sustained, and his sixth assignment of error is moot. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part and reversed in part; and cause remanded.
TYACK, P.J., and DESHLER, J., concur.